UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| TERRI A. BUCK, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:08-cv-35 |
| ) | |
| v. ) | Honorable Janet T. Neff |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____) | |

   This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). On January 29, 2004, plaintiff filed her application for DIB benefits, claiming an October 14, 2000 onset of disability. (A.R. 74-76). Plaintiff was thirty-five years old as of her alleged onset of disability. Her claim was denied on initial review. (A.R. 29, 34-38). On December 12, 2006, plaintiff received a hearing before an administrative law judge (ALJ) at which she was represented by counsel. (A.R. 411-56). Plaintiff testified that she had not been hospitalized for any medical condition since the June 2001 birth of her son. (A.R. 429). Plaintiff's activities included driving seventy miles, once a week, to visit her mother. (A.R. 419). On March 28, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 14-22). On November 19, 2007, the Appeals Council denied review (A.R. 5-7), and the ALJ's decision became the Commissioner's final decision.

On January 14, 2008, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. The two issues raised by plaintiff are as follows:

I. WAS THE ALJ'S ASSESSMENT OF PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY TO PERFORM WORK SUPPORTED BY SUBSTANTIAL EVIDENCE ON THE WHOLE RECORD?

II. DID THE ALJ COMPLY WITH 20 C.F.R. § 404.1527 WHEN HE ACCORDED NO WEIGHT TO PLAINTIFF'S TREATING PHYSICIANS'[] OPINIONS AS TO HER WORK LIMITATIONS?

(Statement of Errors, Plaintiff's Brief at 9, docket # 6). Upon review, I find that the issues raised by plaintiff do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any

fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act from her alleged onset of disability of October 14, 2000, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. The ALJ found that plaintiff had severe impairments of depression, migraine headaches, obesity, and a right shoulder disorder. (A.R. 16). Plaintiff did not have an impairment or

combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ determined that plaintiff's subjective complaints were not fully credible. (A.R. 18-20). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift or carry a maximum of 20 pounds occasionally and 10 pounds frequently. In an eight-hour workday, the claimant can stand, walk, or sit for six hours. She can only occasionally reach overhead with her right upper extremity. The claimant should avoid concentrated exposure to bright lights, strong scents, or chemicals, or loud noises. The claimant is limited to work with a specific vocational preparation (SVP) rating of 1 or 2; work that does not require being in close proximity with others; routine work that does not require frequent significant changes or adaptations; and work that does not involve production quotas or goals, or keeping pace with co-workers.

(A.R. 18). Plaintiff was unable to perform her past relevant work. The ALJ found that plaintiff was thirty-five years old as of her alleged onset of disability, and at all times relevant to her claim was classified as a younger individual. (A.R. 20). The ALJ found that plaintiff has a high school education and is able to communicate in English. The transferability of job skills was not material because plaintiff's past relevant work was unskilled. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 13,700 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (A.R. 447-49). The ALJ held that this constituted a significant number of jobs. Using Rule 202.20 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 14-22).

**1.**

Plaintiff argues that the ALJ did not comply with 20 C.F.R. § 404.1527 because he failed to give adequate weight to the opinions of her treating physicians. (Statement of Errors ¶ II, Plaintiff's Brief at 9, 16-18, docket # 6; Reply Brief at 4-6, docket # 8). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, No. 08-5249, 2009 WL 585788, at * 3 (6th Cir. Mar. 5, 2009)("It is important to keep in mind in this context that opinions on some issues, such as whether the claimant is disabled and her residual functional capacity, 'are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case, *i.e.*, that would direct the determination or decision of disability.'")(quoting 20 C.F.R. § 416.927(e)). "Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Commissioner*, 375 F.3d at 390. A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008)("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of her symptoms is not

entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(d); *see also Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008).

The Sixth Circuit has held that claimants for social security benefits are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876.

Upon review, I find no violation of the treating physician rule and that the ALJ complied with the procedural requirement of providing "good reasons" for the weight he gave to the opinions of plaintiff's treating physicians.

    A.    <u>Danilo A. Dona, M.D.</u>

Plaintiff argues that the ALJ violated the treating physician rule because he failed to give adequate weight to the opinions of her treating physician, Dr. Danilo A. Donna, who opined that plaintiff had "severe limitations in her ability to pay attention and concentrate and her ability to stand stress." (Plf's Brief at 16)(citing A.R. 386). The ALJ found that the restrictions Dr. Dona listed in his October 22, 2006 "Medical Source Statement Concerning Claimant's Ability to Engage in Work Related Activities" (A.R. 384-89) were not well supported by test results and were inconsistent with the record as a whole. (A.R. 19-20). I find no error.

Plaintiff claimed an October 14, 2000 onset of disability. (A.R. 74-76, 86). On August 13, 2001, plaintiff complained to Dr. Dona that for about one month she had been feeling blue, sad, nervous, and tired. Upon examination, plaintiff weighed 181 pounds and her height was 65 inches. She was alert and oriented. Plaintiff had no edema. Her reflexes were normal. Dr. Dona advised plaintiff to seek counseling for post-partum depression. (A.R. 208-09). On October 9, 2001, Dr. Dona provided plaintiff with a prescription for Imitrex in response to her headache complaints. (A.R. 205-06).

On October 24, 2001, Mubeen Memon, M.D., evaluated plaintiff regarding her complaints of post-partum depression. (A.R. 156-57). Plaintiff had no history of inpatient psychiatric hospitalization and no history of any suicidal attempt. She "denied any problems with sleep, appetite, concentration or energy. She denied feeling hopeless or helpless. She denied any suicidal or homicidal ideation." (A.R. 156). She denied any auditory hallucinations or delusions. She denied anxiety or panic symptoms. Plaintiff denied any symptoms of major depression. She reported that "once in a while" her mood would get depressed, the mood would last for five-to-ten

minutes, and then she would start feeling better. (A.R. 157). Sometimes she would cry very easily. Plaintiff related that she was living with her husband and their four-month-old child. (A.R. 156). Dr. Memon found that plaintiff was pleasant and cooperative. There was no evidence of any psychomotor agitation. Plaintiff's affect was appropriate and her thought content was logical and coherent. (A.R. 157). Dr. Memon found that no prescription medication was warranted. She gave plaintiff a global assessment of functioning score of 75. (A.R. 156-57).

X-rays of plaintiff's lungs taken on February 5, 2002 were normal. (A.R. 227). On February 12, 2002, plaintiff weighed 179 pounds, 2 ounces. (A.R. 199). On May 31, 2002, plaintiff described herself as feeling sad and she reported symptoms "associated with difficulty sleeping, episodes of spontaneous crying, lack of energy and recent childbirth." (A.R. 195-96). On September 30, 2002, plaintiff reported to Dr. Dona that she had been experiencing pain in her right foot for about a month. Dr. Dona offered a working diagnosis of metatarsalgia. (A.R. 189-90). The x-rays taken of plaintiff's right foot on September 30, 2002 showed "small soft tissue densities" which were likely of "no significance." No bone or joint abnormalities were observed. (A.R. 218). The June 26, 2003 x-rays of plaintiff's left foot returned normal results. (A.R. 216).

On March 31, 2003, plaintiff complained to Dr. Dona that she was experiencing headaches and depression. Dr. Dona gave plaintiff prescriptions for Midrin and Paxil. (A.R. 182-83). On June 24, 2003, plaintiff complained that she had experienced severe left foot pain for approximately a month. Her weight was 201 pounds. Dr. Dona found that plaintiff was not in any acute distress. (A.R. 180). He gave plaintiff prescriptions for Imitrex, Paxil, and Tylenol # 3 with codeine. (A.R. 181). On August 25, 2003, plaintiff complained of foot pain. Her weight was 204 pounds, 8 ounces. Her extremities had no clubbing, cyanosis, or edema. (A.R. 178).

On September 30, 2003, Punitha Vijayakumar, M.D., examined plaintiff on a referral from Dr. Dona. Plaintiff stated that for approximately a month her migraine headaches had worsened. (A.R. 228). Dr. Vijayakumar found that plaintiff's head and neck were normal. Her extremities displayed normal pulse without edema. Neurologically, plaintiff was alert and oriented. "Cranial nerve examination showed normal pupil, reacting to light, normal visual field confrontation test, no field cuts, full extraocular movements, [and] normal facial sensations and facial movements." (A.R. 229). A motor examination revealed normal tone and strength. Plaintiff's reflexes were normal. "Sensory examination was normal for all modalities such as touch, pinprick and vibration." Plaintiff's gait was normal. (A.R. 229). The October 6, 2003 MRI of plaintiff's brain returned "unremarkable" results. (A.R. 230).

On December 17, 2003, plaintiff weighed 213 pounds, 8 ounces. Her body mass index (BMI) score was 35.56. (A.R. 176). Her pulse was normal bilaterally. She had no edema. She had localized tenderness in her left foot. (A.R. 176-77).

On February 13, 2004, plaintiff's therapist, Gayle Brown, Ph.D. wrote that plaintiff was caring for her son and that plaintiff did not feel that she could return to work and maintain a forty-hour work week. Psychologist Brown's report did not reflect the results of any objective tests, but Brown did record plaintiff's subjective complaints. (A.R. 231-33).

On March 23, 2004, plaintiff complained to Dr. Dona that she was experiencing headaches. Plaintiff was advised to take all her medications as directed. Further, she was instructed to avoid foods that appeared to exacerbate her headaches. (A.R. 320-21). On March 31, 2004, plaintiff complained of her obesity. Her weight was 213 pounds, 1 ounce. Dr. Dona told plaintiff

to control situations that triggered her overeating. She should follow a schedule for eating and avoid random snacking. Dr. Dona instructed plaintiff to exercise on a daily basis. (A.R. 316-17).

On July 22, 2004, plaintiff told Dr. Dona that she was experiencing finger and foot pain. (A.R. 314-15). X-rays of plaintiff's left hand returned normal results. (A.R. 313). An August 7, 2004 bone scan of plaintiff's ankles and feet returned normal results. (A.R. 310). Plaintiff complained of right knee and foot pain on August 10, 2004. (A.R. 308-09). X-rays taken of plaintiff's right knee and foot returned normal results. (A.R. 307). On October 4, 2004, plaintiff complained of foot pain. Her peripheral pulse was normal. She had no edema. Her reflexes were normal. (A.R. 305-06).

On October 20, 2004, Scott E. Hughs, DPM, offered a diagnosis of plantar fascitis of plaintiff's right foot. He started plaintiff on an anti-inflammatory regimen and applied strapping and support to plaintiff's foot. (A.R. 304).

On February 21, 2005, plaintiff sought treatment from Dr. Dona for a wood splinter. Plaintiff had a laceration on her elbow and an abrasion on the third knuckle of her right hand. (A.R. 297-98). On April 21, 2005, plaintiff complained that she was experiencing a persistent headache. (A.R. 295-96). She was alert and oriented. Her weight was down to 184 pounds. She had a full range of motion in all joints and muscles. Neurologic testing returned normal results. Plaintiff's muscle strength and reflexes were normal. (A.R. 295-96).

January 5, 2006 x-rays of plaintiff's left shoulder returned normal results. (A.R. 277). On April 28, 2006, plaintiff reported to Dr. Dona that she was experiencing intermittent numbness and tingling in her feet. X-rays returned normal results. (A.R. 269-71).

On July 5, 2006, Dr. Memon performed a mental status evaluation. (A.R. 328-30). Plaintiff reported that she was living with her husband and five-year-old son. She had worked for Ford Motor Company before her son's birth. Plaintiff stated that she had been on medical disability from Ford for five years, "which ha[d] been supported by Dr. Dona." (A.R. 329). Plaintiff had no history of inpatient psychiatric hospitalizations and no history of suicidal attempts. Plaintiff denied any auditory hallucinations, manic or hypomanic symptoms, anxiety or panic symptoms, or obsessive-compulsive disorder symptoms. (A.R. 328). Dr. Memon found that plaintiff had been diagnosed in the past with "depression, NOS." Plaintiff indicated that Zoloft and Paxil that had been prescribed, and they "helped a little bit." (A.R. 328). Plaintiff was "alert, awake, oriented to person, place and time, adequately dressed, [and] fairly groomed." (A.R. 329). Plaintiff maintained good eye contact. Her affect was anxious. Her thought content was logical and coherent. Dr. Memon found "[n]o evidence of any tangentiality." (A.R. 329). Plaintiff's recent and remote attention were within normal limits. (A.R. 329). Dr. Memon did not perform any objective tests. He recorded plaintiff's complaints that she was experiencing mood swings and irritability, difficulty sleeping, poor appetite, poor concentration, fatigue, and difficulty enjoying things. (A.R. 328). Dr. Memon offered the following diagnosis:

    Axis I:       Bipolar Disorder. History of Major Depressive Disorder.

    Axis II:      None.

    Axis III:     History of Migraine Headaches.

    Axis IV:     Moderate Psychosocial Stressors.

    Axis V:      About 65.

(A.R. 329). Dr. Memon gave plaintiff a prescription for Trazodone on a trial basis. (A.R. 329).

On June 4, 2006, plaintiff stated that for approximately a month she had experienced intermittent right shoulder pain. (A.R. 264). On August 31, 2006, plaintiff complained to Dr. Dona that she was experiencing a persistent cough. Her chest x-rays returned normal results. (A.R. 257-60).

On September 28, 2006, Dr. Dona found that plaintiff was alert, cooperative, and not in any acute distress. Her mental status was "normal." Her cranial nerves were normal bilaterally. Plaintiff's sensory and motor examination results were normal. Her coordination and gait were normal. She had a full range of motion in all joints. (A.R. 293-94). Less than a month later, on October 22, 2006, Dr. Dona supplied plaintiff's attorney with a "Medical Source Statement Concerning Claimant's Ability to Engage in Work Related Activities." (A.R. 384-89). Dr. Dona stated that plaintiff had migraine headaches and post-partum depression. She did not have any physical limitations. Dr. Dona reported that plaintiff's headaches resulted in vertigo, malaise, and photosensitivity. Her headaches were exacerbated by bright lights and noise. Dr. Dona offered opinions that plaintiff's pain and other symptoms would be severe enough to interfere with plaintiff's attention seventy-five percent of the time, and that plaintiff was "markedly limited" in her ability to deal with work-related stress. (A.R. 384-89).

The ALJ found that the extreme restrictions proffered by Dr. Dona were inconsistent with the records as a whole. Plaintiff had no history of psychiatric hospitalizations and no documented episodes of decompensation. (A.R. 18). Her daily activities included cooking, cleaning, shopping, caring for her child, going out to dinner or movies on a monthly basis, using a computer, paying bills, handling the family finances, visiting with friends and family, attending church, horseback riding, reading, watching television, listening to the radio, and weekly drives of

seventy miles to visit her mother. (A.R. 18, 99-108, 123-31, 133-39, 419). The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible:

> The claimant testified that she has had her physical impairments for at least seven years, but the record indicates that she was still able to earn over $56,700 in 1999 and $67,700 in 2000 (Exhibit 5D). She stated her migraine headaches had not gotten worse since she worked at Ford Motor Company from 1989 to 2000. The claimant testified that she did not go out to eat or to the movies, but her mother reported earlier she went out to eat or to the movies monthly (Exhibit 4E). The claimant testified she did not attend church, but reported earlier that she had attended church weekly. (Exhibit 3E).

(A.R. 19). It was against this backdrop that the ALJ found that the functional restrictions that Dr. Dona had offered in the October 22, 2006 statement were entitled to limited weight:

> As for the opinion evidence, in October 2006 Dr. Dona opined that the claimant had marked limitations in dealing with work stress and her symptoms were frequently severe enough to interfere with her attention and concentration (Exhibit 14 F). This opinion is not supported by Dr. Dona's records or consistent with the record as a whole. Therefore, the undersigned assigns only limited weight to this opinion.

(A.R. 20). I find that the ALJ complied with the requirements of the treating physician rule and provided good reasons for the weight given to Dr. Dona's opinions.

### B. William Medick, Ph.D.

Plaintiff argues that the ALJ erred when "he gave no credibility to the even more limiting restrictions of the neuropsychologist, Dr. William Medick." (Plf's Brief at 16). Plaintiff testified that she had seen Psychologist Medick on two occasions in 2006, for one hour on the first occasion and two and one-half hours on the second. (A.R. 453-54). The record does not establish that Medick was a treating psychologist. On October 24, 2006, plaintiff obtained a "neuropsychological assessment" from Medick, a limited license psychologist. (A.R. 380-81).

Plaintiff reported that she had been depressed and had a history of headaches since childhood. She related that she was living with her husband and five-year-old son. Plaintiff had no history of inpatient psychiatric hospitalization. Plaintiff's score on the Wechsler Adult Intelligence Scale-Revised (WAIS-R) test placed her in the average intelligence range. (A.R. 380). Her Wechsler Memory Scale (WMS) test results likewise placed her in the average range. (A.R. 381). Plaintiff had a below average performance score in her short term auditory memory. (A.R. 381). Psychologist Medick completed a "Neuropsychological Symptom Checklist" (NSC). Plaintiff gave a history of experiencing migraine headaches since she was seven years old. She stated that she experienced light headaches every day and intense headaches once every ten-to-fourteen days. (A.R. 381). Psychologist Medick offered an opinion that plaintiff's post-partum depression and headaches would prevent plaintiff from performing "full time gainful employment." (A.R. 381).

On October 24, 2006, Psychologist Medick completed a mental residual functional capacity assessment. (A.R. 390-92). He offered opinions that plaintiff was "markedly limited" in all eight areas of sustained concentration and persistence:

1. The ability to carry out very short and simple instructions;

2. The ability to carry out detailed instructions;

3. The ability to maintain attention and concentration for extended periods;

4. The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

5. The ability to sustain an ordinary routine without special supervision;

6. The ability to work in coordination with others without being distracted by them;

7. The ability to make simple work-related decisions; and

>   8. The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

(A.R. 390-91). He added handwritten notations that plaintiff gave a history of an "affective disorder exacerbated by unpredictable migraine headaches." (A.R. 391). He opined that plaintiff's history of headaches "significantly impair[ed] concentration and her ability to work full time." (A.R. 391). Psychologist Medick concluded that plaintiff was "unable to work full time due to significant medical problems since childhood. [Her] functional capacity is impaired." (A.R. 392).

The ALJ found that the extreme restrictions proffered by Psychologist Medick were not well supported and were inconsistent with the record as a whole:

> Dr. Medick opined that the claimant had marked limitations in sustained concentration and persistence. Dr. Medick averred that the claimant was unable to work full-time due to significant medical problems since childhood. This opinion is not explained by Dr. Medick's reports or supported by the record as a whole. Furthermore, Dr. Medick does not have an extended treating relationship with the claimant, based on the claimant's testimony that she only saw Dr. Medick on two occasions. Therefore[,] the undersigned also ascribes very limited weight to this opinion. Moreover, the issue of disability is ultimately reserved to the Commissioner.

(A.R. 20). The ALJ gave good reasons for discounting Psychologist Medick's opinions, and I find no violation of the treating physician rule.

**2.**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. (Statement of Errors, ¶ I, Plaintiff's Brief at 9). Plaintiff claims that the ALJ committed the following errors:

- The ALJ violated SSR 96-8p in not considering the impact of plaintiff's metatarsalgia on her ability to work.

- The ALJ violated SSR 02-01p because he did not consider the impact of plaintiff's obesity on her ability to work.

- The ALJ's RFC assessment did not adequately address the impact of plaintiff's mental impairment on her ability to perform substantial gainful activity.

(Plf's Brief at 12-15). I find no merit in plaintiff's arguments.

RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a); *see Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is an administrative determination made by the ALJ based upon all the evidence within the record. *Walters*, 127 F.3d at 530; *Bingaman v. Commissioner*, 186 F. App'x 642, 647 (6th Cir. 2006). "[S]tatements from medical sources about what a claimant can still do are relevant evidence, but they are not determinative inasmuch as the ALJ has the ultimate responsibility of determining disability and residual functional capacity." *Deaton v. Commissioner*, 2009 WL 585788, at * 3. The ALJ found that plaintiff retained the RFC for a limited range of light work. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light

work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b); *see Longworth v. Commissioner*, 402 F.3d 591, 596 (6th Cir. 2005). The ALJ's finding that plaintiff retained the RFC for a limited range of light work is supported by more than substantial evidence.

        A.       <u>Metatarsalgia</u>

Plaintiff argues that the ALJ "violated SSR 96-8p" in "not considering the effect of the claimant's metatarsalgia on her ability to work." (Plf's Brief at 12; *see* Reply Brief at 1). Plaintiff is correct that under SSR 96-8p, "the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p (SSA July 2, 1996)(reprinted at 1996 WL 374184, at * 5). Page two of the ALJ's opinion demonstrates that he was well-aware of this requirement: "An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p)." (A.R. 15). Metatarsalgia is defined as "pain and tenderness of the in the metatarsal region." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1162 (31st ed. 2007). None of plaintiff's treating or examining physicians stated that plaintiff's periodic foot discomfort resulted in significant functional limitations. For example, plaintiff's treating physician, Dr. Dona, stated that plaintiff had no limitations in her ability to stand or walk. (A.R. 387). The ALJ did not violate SSR 96-8p.

B.      Obesity

Plaintiff argues that the ALJ failed to comply with SSR 02-1p "in not considering the impact of plaintiff's obesity on her ability to work." (Plf's Brief at 13; *see* Reply Brief at 2-3). The ALJ considered plaintiff's severe and non-severe impairments. (A.R. 15). Without question obesity "may" cause a limitation of function:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

*Titles II & XVI: Evaluation of Obesity*, SSR 02-1p (SSA Sept. 12, 2002)(reprinted at 2000 WL 628049, at * 6). Plaintiff's treating physician did not identify any obesity-related functional restrictions.

Plaintiff argues that the ALJ failed to consider how her obesity impacted her "pain level when standing and walking." (Reply Brief at 3). The court does not make its own credibility determinations. *See Jordan v. Commissioner*, 548 F.3d 417, 422 (6th Cir. 2008); *see also McGlothin v. Commissioner*, 299 F. App'x 516, 523-24 (6th Cir. 2008). The ALJ found that plaintiff's subjective complaints were not fully credible, and the ALJ's findings in that regard are supported by more than substantial evidence.

C.      Mental Impairment

Plaintiff argues that the ALJ's RFC determination did not adequately consider the impact of her depression on her ability to perform substantial gainful activity. (Plf's Brief at 14).

The ALJ's RFC determination addressed these nonexertional impairments by limiting plaintiff to "work with a specific vocational preparation (SVP) rating of 1 or 2; work that does not require being in close proximity with others; routine work that does not require frequent significant changes or adaptations; and work that does not involve production quotas or goals, or keeping pace with co-workers." (A.R. 18). Plaintiff argues that even greater restrictions were necessary because "One of plaintiff's treating physicians, Dr. William Medick Ph.D., a neuropsychologist, after administering a battery of objective tests, with access to all her treatment records, interpreted them and concluded" that plaintiff was "markedly limited in the eight areas previously mentioned." (Plf's Brief at 14-15). The record does not establish that this limited license psychologist had a treating relationship with plaintiff. Further, the "battery" of objective tests he performed generally returned "average" results. The ALJ's RFC determination is supported by more than substantial evidence.

### Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:   March 23, 2009            /s/  Joseph G. Scoville
                                   United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).